## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-KA-01010-SCT

*WILLIAM B. TOWNSEND,JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/15/92 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT N. BROOKS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 8/1/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/22/96 |

**BEFORE SULLIVAN, P.J., SMITH AND MILLS, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

### INTRODUCTION

¶1. On September 9, 1992, appellant William Townsend was convicted in the Circuit Court of Leake County for possession of a Schedule II controlled substance, namely methamphetamine, and as a second offender, he was sentenced to a term of six years with the Department of Corrections and ordered to pay a fine of $5,000.00. Upon payment of the $5,000.00 fine, one year of the sentence would be suspended, and Townsend would be placed on probation for a period of five years. Aggrieved, Townsend brings this appeal contending:

**I. The trial court erred in allowing the State to elicit evidence of the search of Townsend's automobile and the fruits thereof.**

**II. The trial court erred in allowing the state to elicit evidence of the presence of marijuana and paraphernalia.**

**III. The trial court erred in overruling the motion for a directed verdict, and erred in**

**granting State's instruction S-2, and in refusing Townsend's instruction D-9.**

## STATEMENT OF THE FACTS

**¶2.** On March 20, 1992, around 10:44 p.m., Officer Cornelius Turner, while driving east on Highway 16, observed a white vehicle running a traffic light as it was headed west where it crosses Van Buren Street. Officer Turner pulled Townsend over. While Turner was examining his driver's license, Officer Forrest Adcock had pulled up to the scene upon seeing Turner's flashing blue lights. Turner, after conferring with Officer Forrest Adcock, arrested Townsend for failure to appear for three other traffic violations. Officer Turner then put Townsend under arrest and placed him into his patrol car. After Townsend was placed into the patrol car, Officer Turner testified:

> [h]e [referring to Townsend] advised me that he had a black vinyl bag that was [on] the passenger side, front seat of his vehicle. Advised me that it had some money in it, and advised me if he could get it. I advised him that he could not get it, but I would go get it for him.

Officer Turner went to Townsend's car to retrieve this bag of money for him, as Townsend watched unprotestingly. Upon opening the car door, Turner noticed a distinct odor of marijuana smoke inside Townsend's car. The record reveals that Forrest Adcock was with Turner at this time. Officer Turner did not search the car at that point, but took the black bag with the money to his patrol car, and summoned Assistant Chief Ken Adcock, the senior officer on duty, to come to the scene to assist Officer Forrest Adcock. Officer Forrest Adcock was asked by Officer Turner to remain with Townsend's car while he transported Townsend to the Leake County Jail.

¶3. Approximately six or seven minutes after the initial stop and after Officer Turner had left the scene with Townsend, Assistant Chief Ken Adcock arrived. Both he and Officer Forrest Adcock, at that time, initiated a search of the interior of the vehicle, including under the seats. This search was conducted before Gaylon Griffin of Strong's Wrecker service arrived to tow away Townsend's vehicle. Assistant Chief Ken Adcock checked the right side of the vehicle and Officer Forrest Adcock checked the left side. Upon searching Townsend's car, Assistant Chief Ken Adcock testified he discovered:

> [o]n the passenger side in the floorboard of the vehicle, there was a black vinyl bag, and in one of the side pockets of the bag, there was a small set of scales, three syringes. On the inside of the bag, in the big zippered compartment, there was a box of plastic sandwich type bags, and there was a notebook and a small address book. Then in the end of the bag in the other zippered compartment, there was a small plastic bag containing a green leafy substance, which was later identified as marijuana.

* * *

> . . . Inside the address book, there was a small cellophane, piece of cellophane, that was like the corner of some type of cellophane, and it had been sealed by burning the side opposite the corner, and there was a powder substance.

Additionally, the officers found a green cup with some burnt cigarettes and roaches.

¶4. Assistant Chief Ken Adcock took the cellophane, containing the white powdery substance, the syringes, and green leafy material into his possession and packaged it and sent the white powdery substance and the green leafy evidence to the Mississippi Crime Laboratory, where it was identified by Charles Terry, a forensic scientist. Upon running a series of examinations, Mr. Terry found the white powdery substance to be methamphetamine and the green leafy substance to be marijuana. Pursuant to this revelation, he weighed the methamphetamine and found its weight to be 0.1grams. Mr. Terry also weighed the marijuana and found it to have a weight of 10.2 grams.

¶5. At the September 1992 Term of the Circuit Court of Leake County, Townsend was indicted for the crime of possession of a schedule II controlled substance, namely methamphetamine, and tried as a second offender on September 9, 1992.

¶6. At trial, the State put on evidence of marijuana, syringes, and methamphetamine. The State elicited testimony of all of the aforementioned events concerning the stop, the arrest, and the subsequent search of the vehicle. Additionally, the State's forensic scientist, Mr. Terry, testified that in his opinion and as a result of his tests, one of the seized items was methamphetamine, weighing 0.1 grams. He further testified, against the objections, the request for instruction, and the motions for mistrial by Townsend, that the green leafy substance tested was marijuana, weighing 10.2 grams. The judge allowed the testimony about the 10.2 grams of marijuana found, while cautioning the jury not to treat the marijuana as evidence of guilt of possession of methamphetamine.

¶7. At the end of the State's case, Townsend moved the court to exclude the evidence offered on behalf of the state and to direct a verdict of not guilty. Townsend's reasons were one, that for reasons already raised the evidence in this case was the fruit of an illegal search and two, that the State failed to prove that the contents of the bag were under the knowing dominion and control of Townsend. The court overruled these motions on the grounds of a warrantless search, citing *Miller v. State*, 373 So. 2d 1004 (Miss. 1979) (evidence obtained through the use of senses was not a trespass, authorizing a search of the vehicle). The Court also referred to *State v. Thrash*, 257 So. 2d 523 (Miss. 1972) (noting the eye could not trespass). With respect to the second reason the trial judge noted that

> . . . the motion that this was under the Defendant's conscious control. The evidence this court has heard, as well as the jury, is that this Defendant was the sole occupant of the vehicle, which was titled to his name. The Officers having run a check on the vehicle, and it was titled in his name. It was in a bag [the contraband] on the floorboard on the passenger side in plain view.
>
> So, I think the evidence with all inferences flowing from the evidence would sustain a verdict of guilty.

¶8. After deliberations, the jury returned a verdict of guilty as charged and Townsend was sentenced as a second offender on the methamphetamine possession charge. Thereafter, on the same day, Townsend made a motion for a new trial which was overruled. Aggrieved, Townsend appealed to this Court.

## DISCUSSION OF LAW

*I. Whether the court erred in allowing the State to elicit evidence of the search of Townsend's automobile and the fruits thereof.*

¶9. The following facts must be kept in mind when determining whether the marijuana bag came from an illegal search and is therefore inadmissible. Officer Turner had pulled Townsend over for running a traffic light. Officer Forrest Adcock, upon seeing Turner questioning Townsend, also immediately pulled up to the scene. The two officers had placed Townsend under lawful arrest and seated him inside the patrol car upon running a check on his license and discovering three other failures to appear for traffic violations. Townsend himself told the officer that his vehicle contained a money bag that he wanted to retrieve. Officer Turner told Townsend that although Townsend could not get it, he would go get it for Townsend. Officer Turner then proceeded to retrieve the bag. Upon opening the door, the odor of marijuana pierced Officer Turner's nostrils. Officer Forest Adcock was on the scene when Turner smelled the marijuana.[1] Turner then summoned Assistant Chief Ken Adcock to the scene. Turner then left to take Townsend to the Leake County jail, and told Officer Forrest Adcock to stay on the scene until Officer Ken Adcock arrived and until the towing service had picked up Townsend's vehicle. When Officer Ken Adcock arrived about six or seven minutes after the initial stop, Forrest had been waiting for him. Then, they both proceeded to re-initiate a search of the vehicle. When they opened the door, Forrest Adcock testified that there was a "loud smell of marijuana in there." Upon smelling the familiar scent of marijuana, Assistant Chief Ken Adcock saw a black zipper bag sitting in plain view on the floorboard, on the passenger side of the car. The contents of this bag included methamphetamine, some marijuana, contraband, syringes, and scales. Officer Ken Adcock seized the bag, along with its contents. It is the introduction of these items Townsend protests as being fruits of a poisonous tree, and not begotten of a valid search warrant.

¶10. The Fourth Amendment prohibits unauthorized search and seizure of personal property by law enforcement officers. However, an exception exists when there is a consensual search, *Loper v. State,* 330 So. 2d 265 (Miss. 1976), or a search permitted under exigent circumstances with probable cause. *Carroll v. United States*, 267 U.S. 132 (1925) (the seizure is legal if the officer, in stopping and searching the vehicle, has reasonable or probable cause for believing that said vehicle is transporting illegal substance). As a general rule, a policeman making a lawful custodial arrest of the occupant of an automobile may search the automobile "as a contemporaneous incident of that arrest." *New York v. Belton*, 453 U.S. 454, 460 (1981).

¶11. Here, the defendant Townsend initiated the request for the officers to return to his car. Consent is unnecessary when a seizure follows a search based on probable cause. *McCray v. State*, 486 So. 2d 1247 (Miss. 1986).

¶12. Applying the law to the facts at bar, Townsend's consent is unnecessary because the facts lend themselves to probable cause. The officers had placed Townsend under lawful custody. They had called a private towing service to take away Townsend's car. It appears that the officers did not intend to further search the vehicle, until Townsend's request for his money bag sent Turner back to the vehicle. It was there that the smell of marijuana hit Officer Turner, giving him probable cause to search further for the source of the smell. However, Turner did not search further, but chose to call Officer Ken Adcock to the scene, and asked Officer Forrest Adcock to remain there until Adcock and the towers arrived. Thus, in this vein, Townsend's consent is irrelevant to this discussion of lawful seizure. Because the smell of marijuana was apparent when Turner opened the car, with Officer

Forrest Adcock standing beside him at that time, any ensuing search was legal. It was Townsend's request for the money bag that triggered the officers return to his vehicle. He cannot not now fault the officers for their subsequent discovery upon returning to the vehicle, when their very purpose for going there was to meet his needs. The record reveals absolutely no duress or coercion, just an officer retrieving a requested money bag and stumbling upon a marijuana smell, and that officer then calling his superior to the scene.

¶13. The main thrust of the law in this area is that when an officer is making a valid stop, and has not exceeded his parameters in dealing with the defendant, any search pursuant to probable cause is valid. *Carroll v. United States*, 267 U.S. 132 (1925); *McCray v. State*, 486 So. 2d 1247 (Miss. 1986). In determining whether probable cause existed for a particular search, it must be information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found. *Rooks v. State*, 529 So. 2d 546 (Miss. 1988). Thus, a search may be made when circumstances surrounding the search incident to arrest indicate probable cause, and items may be seized as result of cursory viewing of area. *Conway v. State*, 397 So. 2d 1095 (Miss.), *cert. denied*, 449 U.S. 826 (1980). "The sense of smell is no less important or reliable than the sense of sight." *Miller v. State*, 373 So. 2d 1004, 1006 (Miss. 1979).

> An automobile may be searched, given the proper circumstances, without warrant either as an incident to a valid arrest or because there is probable cause that the vehicle itself may be evidence of crime or contain something that offends against the law.

*Miller v. State*, 373 So. 2d 1004, 1006 (Miss. 1979), *citing Hall v. State*, 288 So. 2d 850 (Miss. 1974). The determination of probable cause is a judicial question to be determined by the court in each case. *Rooks v. State*, 529 So. 2d 546, 552 (Miss. 1988). Proper circumstances or probable cause has been found to exist where law enforcement officials searched a pickup truck upon observing suspicious activities surrounding the truck, and the testimony of established officials who could smell marijuana close to the pickup. *Rooks v. State*, 529 So. 2d 546 (Miss. 1988). "Smell can be the basis for probable cause therefore, it appears that the officers could also search the vehicle." *Boches v. State*, 506 So. 2d 254, 264 (Miss. 1987). If there was probable cause for search and seizure, the defendant is not entitled to suppress evidence seized during search. *Tucker v. State,* 403 So. 2d 1271 (Miss.), *cert. denied*, 454 U.S. 1089 (1981).

¶14. Applying the law *sub judice*, the State had probable cause to search Townsend's vehicle. As the facts demonstrate, the officers were not intending on searching the vehicle as they had called a private towing service. It was not until Townsend asked Turner to retrieve his money bag that Officer Turner smelled the marijuana. Officer Forrest Adcock was on the scene when this happened. Soon after Turner left, Officer Ken Adcock arrived, and then the two officers continued the search since Turner chose to return to the jail with Townsend. At that point, the officers noticed a black bag in plain view on the floorboard, near where the requested money bag had been, and seized it. Because the underlying smell was present, all of the officers, Turner and the two Adcocks, who had training in narcotics, had probable cause to search and seize. And since there was probable cause, Townsend is not entitled to suppress any evidence seized during that search. The seized property is not fruit of a poisonous tree.

¶15. This Court has recognized that the notion of probable cause is a "fluid concept." *Rooks v. State*,

529 So. 2d 546, 554 (Miss. 1988). This Court further stated:

> It is incumbent upon all judges of this State to scrupulously examine the facts in each case, make a careful evaluation, and in their own best judgment gleaned from life's experiences determine whether probable cause existed for a particular search or issuance of a magistrate's search warrant. It is not what some officer thought, it is not some conduct that was simply unusual, not some conduct which simply roused the suspicion that illegal activity could be afoot when there was at the same time just as likely a possibility that nothing at all illegal was transpiring. Rather, it must be information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found. While no more than this will be required, at least this much will be demanded. The *Aguilar* and *Spinelli* tests remain valuable guides, but they are not all encompassing.

*Rooks*, 529 So. 2d at 554-55. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. *Harris v. United States*, 390 U.S. 234 (1968); *see also* **U.S. v. Ross**, 456 U.S. 798 (1982) (if supported by probable cause, a warrantless search of an automobile and its contents does not violate the Fourth Amendment); **Government of Canal Zone v. Eulberg**, 581 F. 2d 1216 (5th Cir. 1978) (evidence obtained was admissible, since van was in continuous possession of narcotics agents). The officers had every right to search the vehicle, as they had probable cause, and the multi-stage search was just a part of one continuous transaction. Therefore, the contents of that search are admissible.

*¶16.* Townsend alleges that a warrantless search of his vehicle following his arrest was illegal since there was no danger that evidence would be destroyed or removed. Moreover, there was ample time to obtain a warrant. Thus, Townsend says the case should be reversed because the evidence found in his vehicle was fruit of an unreasonable and unconstitutional warrantless search.

¶17. Townsend, in support of this argument, cites **Fields v. State**, 382 So. 2d 1098 (Miss. 1980). Townsend attempts to relate **Fields** to the case at hand, for the reason that Fields was arrested for speeding and possession of marijuana. **Fields**, 382 So. 2d at 1100. While Fields was in jail, the officers searched his vehicle without obtaining a search warrant and they found marijuana. **Id.** Thereafter, he was convicted for possession of marijuana and PCP. **Id.** This Court reversed Fields' conviction because of his right to protection against unlawful searches and seizures under the Fourth Amendment to the United States Constitution. **Id.** at 1101.

¶18. In reviewing **Fields**, this Court notes that this was a case where the defendant was in fact in jail when the search was conducted. However, the distinguishing factors from **Fields** and the case **sub judice** are that in **Fields** the defendant was arrested and incarcerated in jail for crimes of speeding and possession of marijuana. **Fields**, 382 So. 2d at 1100. Fields' car was placed in a public garage. **Id.** Thereafter, the officers, without a warrant, obtained a vacuum cleaner belonging to the wife of the garage owner and vacuumed the interior of Fields' car. **Id.** The contents of the bag were then analyzed and found to contain a small amount of marijuana. **Id.** This Court in **Fields** held:

> [t]he search was in no way an incident to the arrest.

> Nor can the vacuuming of the interior of Fields' automobile be considered a measure reasonably

connected with an effort on the part of the officers to protect themselves, the car or its contents.

*Fields*, 382 So. 2d at 1101.

¶19. In the case at hand, this Court notes that Officer Turner went to Townsend's car, because Townsend, after being arrested and placed in the patrol car, told him he had some money in a bag and Townsend asked if he himself could go get it. Officer Turner would not let Townsend retrieve this bag, but instead went to the car himself, and upon opening the door to Townsend's car smelled a distinct odor of marijuana. At that time, Officer Forrest Adcock was also present. Thereafter, Townsend summoned Assistant Chief Ken Adcock to the scene. After Ken Adcock was summoned, Officer Turner asked Officer Forrest Adcock to stay with the car and watch it while he took Townsend to jail.

¶20. Six or seven minutes after Officer Turner and Townsend had left, Assistant Chief Ken Adcock arrived. Both Officer Adcock and Assistant Chief Adcock began checking the vehicle, and upon opening the door detected the smell of marijuana. Assistant Chief Ken Adcock observed in plain view another black bag on the passenger side floorboard. Upon searching the contents of this nylon zipper bag they found the contraband at issue.

¶21. The State justifies the search as conducted incident to an arrest. The State cites *New York v. Belton*, 453 U.S. 454, 460 (1981), saying:

> the Supreme Court upheld the warrantless search of the passenger compartment of an automobile and the containers found therein as incident to a lawful arrest of the occupants car. The Court Stated,

> Accordingly, we hold that when a policeman makes a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

¶22. The United States Supreme Court went on to say:

> [i]t follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. *United States v. Robinson*, *supra*; *Draper v. United States*, 358 U.S. 307, 3 L.Ed. 2d 327, 79 S.Ct. 329 (1959). Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but **the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.**

*New York v. Belton,* 453 U.S. at 461 (emphasis added).

¶23. Here the facts indicate that Townsend was placed under arrest on probable cause that Townsend ran a traffic light, and that Townsend was wanted for failure to appear for three other traffic violations. Further, Townsend was the sole occupant of the car. And, shortly after Townsend was placed into the patrol car, Officer Turner went back to Townsend's car to retrieve a bag of money Townsend told him he wanted to go get. Moreover, when Officer Turner opened Townsend's car

door he smelled a distinct odor of marijuana smoke. Nonetheless, Officer Turner asked Officer Forrest Adcock to remain with the vehicle while he transported Townsend to jail. Six or seven minutes later Assistant Chief Ken Adcock arrived at the scene and both he and Officer Forrest Adcock began searching the car, once again noticing the smell of marijuana and finding the contraband, as previously stated, within the second black bag.

¶24. This Court notes that the United States Supreme Court has said:

> It is true, of course, that these containers will sometimes be such that they could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested. However, in **United States v. Robinson**, the Court rejected the argument that such a container - - there a "crumpled up cigarette package" -- located during a search of Robinson incident to his arrest could not be searched: The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. **A custodial arrest of a suspect based upon probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.** 414 U.S. at 235. (parallel citation omitted).*New York v. Belton,* 453 U.S. at 461.

¶25. The search of the passenger compartment of the car for the bag of money, in which Townsend was the only passenger, followed immediately after arrest. And the smell of marijuana gave Officer Turner and fellow officers all the probable cause needed to conduct a more probative search of the area that was within Townsend's immediate control. Therefore, the search of the passenger compartment and of the bag was valid as justified by a search incident to an arrest and probable cause. *See also* **Ervin v. State**, 431 So. 2d 130 (Miss. 1983) (reiterating where probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search).

¶26. In conclusion, this Court holds that Townsend's car was legally searched by Officer Turner and Officers Adcocks incident to a valid arrest, and probable cause existed to conduct a more comprehensive search of Townsend's vehicle and the bags therein.

### II. Whether the trial court erred in allowing the state to elicit evidence of the presence of marijuana and paraphernalia.

*¶27.* In his first argument, Townsend contends that the trial court erred in allowing evidence of marijuana and syringes at his trial for possession of methamphetamine. Townsend goes further and sets out four particular instances in which such evidence was introduced over his objections, and motions for mistrial. They are:

> 1. that during the testimony of Mr. Terry, the State's forensic scientist, certain plant type material was identified as containing 10.2 grams of marijuana and was marked for Identification No. 2, over the objection and motion for mistrial of Townsend.

> 2. that cigarette type material was identified as containing 0.1 grams of marijuana and was marked for Identification No. 3.

3. that syringes, identified and marked for Identification No. 4, were introduced into evidence as State's Exhibit No. 3, also over Townsend's same objection.

4. that the 10.2 grams of marijuana, marked for Identification No. 2, was later admitted into evidence, over Townsend's same objection, as State's Exhibit No. 5.

¶28. In his objection at trial, Townsend complained of the relevancy of the marijuana to the methamphetamine charge; however, on appeal, his complaint is bottomed on the prejudicial effect of the introduction of the evidence on the jury's decision. "When a defendant seeks to assert grounds other than those on which his trial objection was based, it follows that this instance is not reviewable by this Court." *Duplantis v. State*, 644 So. 2d 1235, 1247 (Miss. 1994), *citing* *Stringer v. State*, 279 So. 2d 156, 158 (Miss. 1973) ("objection on one or more specific grounds constitutes a waiver of all other grounds"); *McGarrh v. State*, 249 Miss. 247, 276, 148 So. 2d 494, 506 (1963) ("objection cannot be enlarged in reviewing court to embrace omission not complained of at trial"). Thus, this issue is procedurally barred, as Townsend is seeking review on a new ground.

¶29. Without relaxing the procedural bar, we will alternatively review the merits. In order to enter into evidence the finding of the marijuana, the State argued that the evidence was so intertwined that to refuse to admit it would deny the jury essential pieces of the evidentiary puzzle. The trial judge agreed, as is evinced in his statement:

> During voir-dire, I noted the District Attorney confined his remarks to the case that is charged in the indictment as that being possession of methamphetamine, and that upon further voir-dire by Mr. Brooks, there was some voir-dire of this jury that this is not a marijuana case, it is just a case of methamphetamine, statements to the effect that would be a separate trial and tried in another case, and not to consider the marijuana as any evidence of guilt of this Defendant. (emphasis added).

> I think that this evidence is admissible, because of the res gestae rule, in that in the search of that vehicle and its contents, there was found evidence of methamphetamine and also in the same area, the marijuana with the paraphernalia. I don't see hardly how the testimony can be separated of the findings within the bag, so as not to confuse this jury. I think the totality of the entire situation stresses the need for all of the evidence to come in, since they are the trier of facts of the case.

> So, for that reason, I think this evidence is admissible. Then for, again, because of the voir-dire of the jury by counsel, I think the door was opened, and it is admissible.

> Now I think you are entitled, Mr. Brooks, to a jury instruction, and I will give it, that this jury shall not consider the presence of marijuana or paraphernalia as any evidence of guilt against this Defendant in the crime charged of that of possession of methamphetamine.

¶30. The above statements tell much about the events at trial that day. It was Townsend's defense counsel who started the ball rolling in voir-dire, by hinting that other drugs were involved beside the charged methamphetamine, and that these other drugs should not be taken into consideration when deciding guilt on the possession of methamphetamine.

¶31. The general rule is that the introduction into evidence of unlawful substances not mentioned in the indictment for possession of a controlled substance is reversible error unless the introduction was necessary for identity, intent or motive, and was not so interwoven with other crimes that it could not be separated. *Bolin v. State*, 489 So. 2d 1091 (Miss. 1986). Generally, evidence of a crime other than that charged in indictment is not admissible against the accused; however, where another crime or act is so interrelated to the charged crime so as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences, proof of the other crime or act is admissible. *Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994). Evidence of another offense is admissible if that offense is so clearly interrelated to the charged crime as to form single transaction or closely related series of transactions. *Mackbee v. State*, 575 So. 2d 16 (Miss. 1990). It must be integrally related to time, place, and fact to that for which defendant stands trial. *McFee v. State*, 511 So. 2d 130 (Miss. 1987). In other words, the evidence is essential for telling the total, rational, and coherent story. *Hurns v. State*, 616 So. 2d 313 (Miss. 1993).

¶32. In this case, the trial judge is correct that introduction of the other illegal substances found along with the methamphetamine was necessary to tell the entire, coherent story. Defense counsel already spilled the beans about the existence of other drugs beside methamphetamine during voir-dire. The testimony elicited about the marijuana, the cigarette-type marijuana, and the syringes, were integral to the same time, place, and fact to the charge for methamphetamine. They were all found in the same black vinyl bag on defendant's car floorboard. It is definitely part of the same transaction, or part of a closely-related transaction. Perhaps the existence of the marijuana and other elements could have been separate, i.e. not so intertwined, at one point, but defense counsel opened the door for their introduction by hinting at their existence during voir-dire. Thus, the prosecution elicited testimony from the State's witness, Charles Terry, about what other items were found in the bag, along with the methamphetamine. Terry responded by describing the scientific methods used to determine what the substance was, and then, naming the substance by quantity. While there was objection from defense counsel, the objection was fashioned in terms of lack of relevancy, not prejudice v. probativeness. Each objection was overruled.

¶33. Now, Townsend cites *Bolin v. State*, 489 So. 2d 1091 (Miss. 1986), to support his position that other crimes are inadmissible. Bolin was convicted of possession of meperidine. The trial court there improperly allowed the prosecution to introduce into evidence several other illicit drugs not specified in the indictment and for which the defendant was not being tried. There, in reversing and remanding, this Court, relied on the general rule, and found that

> [t]he introduction of the contraband not included in the indictment, in our opinion, was not necessary for identity, intent or motive, nor is it so interwoven with other crimes that it cannot be separated; neither is scienter or guilty knowledge an essential element of the crime of unlawful possession. The present indictment charges a possessory crime, a crime prohibited by law, rather than a violation of law which is inherently wrong. The issue is not one of "guilty intent" or the intent to do something morally wrong but only an intent to possess an illegal substance.

*Bolin*, 489 So. 2d at 1092. (citations omitted). *Bolin* does not reveal what the circumstances of the arrest were, nor does it speak to whether the other crimes introduced were past crimes. The following year, this Court in *Shoemaker v. State*, 502 So. 2d 1193, 1195 (Miss. 1987), referred to

***Bolin***, as holding that "evidence of past crimes not resulting in convictions is generally inadmissible."

¶34. ***Bolin*** is different from the case at bar. The case at bar is not dealing with past crimes. It deals with illegal substances found at the same time, same place, same bag, as the illegal substance listed on the indictment form. Thus, the other substances (marijuana and syringes) are interwoven or inseparable from the charged offense.

¶35. Rule 404(b) of the Mississippi Rules of Evidence precludes evidence of other crimes, wrongs, or acts to show that the defendant acted in conformity therewith. However, if evidence of other crimes, wrongs, or acts is offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, it is admissible under M.R.E. 404(b). ***Lewis v. State***, 573 So. 2d 719, 722 (Miss. 1990) (citations omitted). The concern behind admitting other crimes is that the jury might believe that defendant acted in conformity with his past crime, and such constitutes prejudice and reversible error. ***Rose v. State***, 556 So. 2d 728, 731 (Miss. 1990); ***Houston v. State***, 531 So. 2d 598, 605 (Miss. 1988).

¶36. However, in this case, it is not a past crime that is being introduced. It is essentially different parts of the same crime or transaction. Evidence is admissible as showing res gestae of crime, if evidence tends to show part of the entire transaction. ***Wade v. State***, 583 So. 2d 965 (Miss. 1991).

> [A]rticles . . . found near the place or scene of crime or near the place where the defendant was arrested, have been admitted in evidence. (citation omitted). This is true even where it is not claimed nor proved that they were used in the commission of the alleged crime in cases where the evidence has probative weight, or where they constitute a part of the surrounding scene or picture . . . .

***Wilkins v. State***, 264 So. 2d 411 (Miss. 1972). This general principle of ***Wilkins*** highlights the situation at bar, even though that case dealt with the commission of burglary, not narcotics.

¶37. Thus, the jury could be told about the presence of the other illegal substances, since it was interwoven to the crime scene. Moreover, the jury especially needed to be told about the other elements found once their curiosity was peaked by defense counsel's remarks during voir-dire. There is nothing wrong with the trier admitting the evidence of the marijuana, the cigarette-type marijuana, and the syringes, especially, in light of his repeated verbal admonition to the jury that the evidence would not be weighed towards finding guilt, and the jury instruction given the defendant reflecting that principle.

¶38. ***Shoemaker v. State***, 502 So. 2d 1193, 1195 (Miss. 1987), dealt with a trial judge who took a curative measure after the jury was told about the defendant's prior misdemeanor record. There also, the defense counsel objected and asked for a mistrial. The trier in ***Shoemaker*** did not grant the mistrial, but instructed the jury "to completely disregard that question and to not have any inference in [its] mind from the fact that [the prosecution] started into some question about an incident of a similar nature [to the one at bar]." ***Id.*** at 1195. We found that the lower court was not required to grant a mistrial because of the "thorough curative measure" employed by the trial judge gave us the "confidence" that the inflammatory material had no harmful effect on the jury. ***Id.***

¶39. Thus, under these guiding principles, we must analyze the situation in terms of whether there

was prejudice to the jury, and whether the trial judge cured the prejudice. Here, like the ***Shoemaker*** trial judge, the lower court cured the perceived unfairness through the giving of the Defense's instruction D-6, which reads:

> The Court instructs the jury that you are not [to] consider the evidence of marihuana [sic] and/or paraphernalia in this case as evidence of the Defendant's guilt of the crime for which he is being tried.

Thus, pursuant to our holding in ***Shoemaker***, we again find that jury instructions can cure defects by admitting evidence of crimes not charged. *See **Shoemaker***, 502 So. 2d at 1195. "Common sense dictates that the trial judge will ordinarily be in a better position to assess the amount of prejudice resulting from such an incident than we are on appeal." ***Id***. Admission of evidence and testimony about evidence is within the broad discretion of the trial court, requiring a reversal only on a demonstrable abuse of that discretion. ***Wade v. State***, 583 So. 2d 965 (Miss. 1991). We abide by the lower court's decision again today as he was in a better position to assess and cure any prejudice, and because there was no abuse of his discretion.

¶40. First, this issue is procedurally barred. Second, and alternatively on the merits, there was no error for introducing the marijuana and the syringes into evidence, as it was first brought up by the defense counsel, it was interwoven to the charged crime, and it was necessary for a coherent picture. Moreover, any prejudice was cured by the judge's instruction to the jury not to consider the side items to prove guilt of the charged crime.

> ### III. Whether the court erred in overruling the motion for a directed verdict, and erred in granting State's instruction S-2, and in refusing Townsend's instruction D-9.A. The Directed Verdict

¶41. The lower court overruled Townsend's motion for a directed verdict requested upon the State resting its case. This Court has repeatedly said when considering a motion for a directed verdict, it must consider the evidence introduced in the light most favorable to the State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom. ***McGee v. State***, 569 So. 2d 1191, 1192 (Miss. 1990); ***Barnwell v. State***, 567 So. 2d 215, 217 (Miss. 1990); ***Davis v. State***, 530 So. 2d 694, 703 (Miss. 1988). If there is sufficient evidence to support a guilty verdict, the motion for directed verdict must be overruled. ***Id.***

*¶42.* Townsend argues that once the State rested, he moved for a directed verdict and one of the grounds assigned for the motion was the prosecution's failure to prove that the contraband was "under the knowing dominion and control of Townsend." The trial court overruled the motion on this ground, as well as on another ground.

*¶43.* In reviewing the record and the trial court's reasoning, there exists ample evidence to sustain a verdict of guilty. It is apparent from the record that the officers were justified in searching the car incident to a valid arrest and indeed obtained further probable cause based upon the officers' smelling of marijuana smoke in the car giving the officers a justifiable reason to search the containers within Townsend's immediate control. Further, Townsend was the sole occupant of the vehicle and the officers ran a check on the car and found it titled in Townsend's name. Moreover, the bag containing methamphetamine was in plain view on the passenger side floorboard, it was within his immediate

control, and Townsend should have known it was in his car. Thus, this Court concludes that the evidence and inferences flowing therefrom do provide ample evidence to sustain a verdict of guilty of possession of methamphetamine.

### B. The Grant of Instruction S-2 and the Denial of D-9

¶44. We must answer whether the trial court erred in granting the State's instruction S-2, which reads as follows:

> The Court instructs the Jury that where a person is occupying and exercising control over an automobile, he is presumed to be in constructive possession of the contents of the automobile.

¶45. Townsend objected to this instruction as not being a true statement of the law. He further argued that there must be some evidence to indicate knowing possession other than simply occupying and exercising control over the automobile. The trial court overruled the objection and granted the instruction. In response, Townsend submitted jury instruction D-9, which read:

> The Defendant is charged by indictment with the crime of possession of a controlled substance, namely methamphetamine.

> To constitute a possession, there must be sufficient facts to warrant a finding beyond a reasonable doubt that the Defendant was aware of the presence and character of the particular substance, in this case, methamphetamine, and was intentionally and consciously in possession of it.

> **Where the particular substance is not in the actual physical possession of the Defendant, there must be sufficient facts to establish beyond a reasonable doubt that the substance involved was subject to the Defendant's dominion or control.**

> The burden of proof in this case is on the State of Mississippi, and unless the State has presented evidence sufficient to prove beyond a reasonable doubt that the substance involved was subject to the Defendant's dominion or control and that the Defendant was intentionally and consciously in possession of it, then it is your sworn duty to return a verdict of not guilty.

> If you return a verdict of not guilty, the form of that verdict, written on a separate sheet of paper, shall be as follows:

> "We, the jury find the Defendant not guilty."(emphasis added).

¶46. The State objected to the instruction as being a misstatement of the law. The trial court agreed with the State's position on Instruction D-9, as evinced by the following comment:

> BY THE COURT: I don't think the law is such that a person has to have his hand on it to be in physical possession. As I stated, this fellow was the sole occupant and driver of this vehicle. This bag in which the substance was within, was within an arm's reach. I don't see how he can say he is not in actual physical possession of it. I think the instruction is well taken and will be given excluding the third paragraph. Do you care to offer it as amended?

> BY MR. BROOKS (Townsend's attorney): No, your honor.

¶47. Any deficiencies that Instruction S-2 had would have been cured by D-9, as the unoffending portion of D-9 spoke to the jury's need to find that the defendant was "beyond a reasonable doubt" "aware of the presence and character of the particular substance, in this case, methamphetamine, and was intentionally and consciously in possession of it." However, the defense counsel refused to delete the offending and superfluous portion of D-9, and would not submit an amended version, upon the lower court's request. The defense counsel made this choice without objection. Townsend is therefore procedurally barred from raising this issue at this point when he did not do so at trial or in his motion for new trial. *Davis v. State*, 660 So. 2d 1228 (Miss. 1995); *Foster v. State*, 639 So. 2d 1263 (Miss. 1994); *Box v. State*, 610 So. 2d 1148 (Miss. 1992).

¶48. This Court agrees with the trial court's offer to amend the instruction, which was declined by defense counsel. This Court has found previously that "when contraband is found on premises owned by the Defendant, a presumption of constructive possession arises." *Cunningham v. State*, 583 So. 2d 960, 962 (Miss. 1991); *see also Esparaza v. State*, 595 So.2d 418, 426 (Miss. 1992) (holding "[w]hen drugs are found on premises, exclusive control provides significant proof of constructive possession") (emphasis added). Thus, this Court concludes that there was no reversible error as to the denial of Instruction D-9, as the offending portion was confusing to the ultimate law on constructive possession, and the amended version sought by the lower court from defense counsel was not submitted by defendant.

¶49. As to the granting of S-2, this Court's standard in reviewing jury instructions is to read all instructions together and if the jury is fully and fairly charged by other instructions, the refusal of any similar instruction does not constitute reversible error. *Lee v. State*, 529 So.2d 181, 183 (Miss. 1988). This Court does not review jury instructions in isolation. *Malone v. State*, 486 So. 2d 360, 365 (Miss. 1986).

¶50. The lower court along with S-2, granted S-1, which reads as follows:

> The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that at the time and place charged in the indictment and testified about, that the Defendant, William B. Townsend, Jr., did wilfully unlawfully and feloniously have in his possession and under his conscious control a Schedule II controlled substance, namely methamphetamine, in Leake County, Mississippi, then it is your duty to find the Defendant guilty as charged.

> In the event you find the Defendant guilty, the form of your verdict should be as follows:

> "We, the Jury, find the Defendant, William B. Townsend, Jr., Guilty as charged."

¶51. This Court notes *Miller v. State*, 634 So. 2d 127, 129 (Miss. 1994), where we stated:

> [c]onstructive possession has been the subject of frequent interpretation by this Court. Actual physi cal possession need not be shown for conviction if the contraband is in the constructive possession of the accused. If the substance is subject to the defendant's dominion or control, it is said to be within . . . his constructive possession.

> In *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971), this Court stated:

[T]here must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession.

*Miller v. State*, 634 So. 2d 127, 129-30 (Miss. 1994)(emphasis added).

¶52. Here, however, Instruction S-2, says that where a person is occupying and exercising control over an automobile, he is presumed to be in possession of contents (i.e. drugs found therein) of the automobile. This alone is an incorrect statement of the aforementioned law; however, coupled with Instruction S-1, which speaks to "conscious control" over the illegal substance, there is no error looking at the jury instructions as a whole. Moreover, as previously discussed, the lower court wanted Instruction D-9, which also would have made a more complete version of the law on constructive possession, but the defense counsel refused to tailor D-9 to eliminate the troubling elements in it, and would not submit an amended version. The blame for poor choices by defense counsel cannot be placed on the doorstep of the lower court.

## CONCLUSION

**¶53.** The contents of Townsend's car were admissible as they were the fruits of a legal search pursuant to probable cause. Moreover, the admission of evidence of other illegal substances found at the scene of the crime, is a procedurally barred issue. Bar aside, the admission of the marijuana and syringes, in spite of the fact that the indictment was only for the possession of methamphetamine, was proper as it was first brought up by the defense counsel, and second, it was an interwoven part of the same transaction. The lower court was correct in denying the defendant's motion for a directed verdict, and for the granting Instruction S-2, denying Instruction D-9, in light of the existence of Instruction S-1, which allowed for a complete statement of the law. Finding no error by the lower court on any of the three issues raised, we now affirm.

**¶54. CONVICTION OF POSSESSION OF METHAMPHETAMINE AND SENTENCED UNDER § 41-29-147 TO SIX YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ONE YEAR SUSPENDED AFFIRMED; DEFENDANT TO PAY A FINE OF $5,000.00 AND PLACED ON PROBATION FOR FIVE(5) YEARS. DEFENDANT IS GIVEN CREDIT FOR SIX (6) DAYS JAIL TIME.**

**PRATHER AND SULLIVAN, P.JJ., AND ROBERTS, J., CONCUR. PITTMAN AND MILLS, JJ., CONCUR IN RESULT ONLY. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.; SMITH, J., JOINS IN PART. DAN LEE, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**BANKS, JUSTICE, CONCURRING:**

¶55. I agree with the result reached by the majority but not all that is said. I write separately to

delineate the points of departure.

¶56. I find no procedural bar with respect to the assertion that the trial court wrongfully admitted evidence of other crimes. The objection below is that such evidence was irrelevant. Here it is claimed that the evidence is unduly prejudicial. There is no concession, however, that the evidence is relevant. The argument made to this Court is that it was not only error to admit it but reversible error. Thus, the focus is on the harm caused by its admission.

¶57. With difference, I also reject much of what is said concerning the so-called "*res gestae* of the crime." The term *res gestae* is no longer in our rules of evidence. Our continued use of this shorthand term obfuscates the true evidentiary issue.[2] Either the proffered proof is relevant to some issue to be tried or it is not. *See Johnson v. State*, 655 So. 2d 37, 43-44 (Miss. 1995) (Banks, J., dissenting). There is no necessity to tell the "whole" story unless each element of the story is relevant or necessary to understanding the evidence. If the marijuana was not relevant to the issue of guilt, it should not have been admitted. More important, this Court should not continue to sanction the practice of putting obviously prejudicial information before juries in contravention of our rules under some supposed necessity to tell the "whole" story.

¶58. Nor do I agree that there was a necessity to introduce this evidence because the jury's "curiosity" may have been raised by the voir dire statements of defense counsel. Trials are not conducted to satisfy jury curiosity. They are conducted so that an appropriately instructed jury can determine facts based on the relevant evidence. The fact that defense counsel made some reference to marijuana, all the while saying that it is not at issue, should not give license to put on evidence concerning the marijuana. Finally, I do not agree that the fact that the marijuana was found with the methamphetamine makes it inextricably interwoven with the crime of possession of methamphetamine. That one possesses one controlled substance in the same container as another or a non-controlled substance, such as, for example, tobacco, does not, *ipso facto*, make the other substance a part of the same "transaction."

¶59. That last point, however, does explain my concurrence. While the presence of tobacco would not be, *ipso facto*, relevant to any issue in a trial for possession of the controlled substance, if it were shown that the subject was using the tobacco, its presence with the controlled substance may tend to show knowledge of the presence of the controlled substance. Such is the case here. The smell of marijuana smoke in the car gave rise to the inference that Townsend was using the marijuana in the bag and thus had knowledge of the presence of the methamphetamine in the same bag. Indeed, this is the argument that the prosecutor made to the jury. While no similar claim can be made for the introduction of the syringes also found, neither can one claim that their admission was unduly prejudicial. Of course, the strength of any inference to be drawn from the marijuana usage and its proximity to the methamphetamine with respect to knowledge of the presence of the amphetamine must be measured against the potential for undue prejudice under Rule 4.03 M. R. E., where such an objection is made. Here there was no such objection.

¶60. Finally, it is my view that there was nothing wrong with the paragraph in D-9 that the court struck. I am also of the view, however, that the stricken paragraph didn't help the instruction very much. The essential thought was in paragraph two. Townsend should have kept the instruction as amended, preserving his objection, rather than go without. This would have helped cure any

confusion caused by S-2. I think that S-1 does not "cure" S-2. D-9 as amended would have. I agree with the majority that because he refused to accept the amended version, Townsend cannot now claim error.

**SULLIVAN, P.J., JOINS THIS OPINION. SMITH, J., JOINS THIS OPINION IN PART.**



**DAN LEE, C.J., CONCURRING IN PART AND DISSENTING IN PART:**


¶61. I concur with the majority insofar as it finds as meritless Townsend's first two assignments of error. Moreover, I concur with the majority's determination as tof issue three that the trial court's submission of State's Jury Instruction S-2 was erroneous. However, I, unlike the majority, find that the submission of S-2 constituted reversible error and that Townsend was entitled to Jury Instruction D-9. Accordingly, I concur in part with the majority and respectfully dissent in part.

¶62. First, I submit that the lower court committed reversible error when it gave State's Jury Instruction S-2. As drafted and submitted, S-2 constituted a peremptory instruction and the submission of such an instruction was reversible error. *See Turner v. State*, 573 So. 2d 1340, 1343 (Miss. 1990) (There is no directed verdict of guilt in criminal cases). Essentially, S-2 allowed the jurors to find Townsend guilty of possession if they found he was in the car where the methamphetamine was discovered.

¶63. Since the methamphetamine was not found on Townsend's person but in his car, the only way that he could be guilty of possession was if the jury found that Townsend had constructive possession of the drug. *Newell v. State*, 590 So. 2d 1386, 1388 (Miss. 1991). The majority suggests that the submission of Jury Instruction S-1 which speaks of "conscious control" saves the day. Notwithstanding the majority's argument, their position is untenable because neither S-1 nor S-2, taken alone or together, properly instructed the jury as to the law regarding constructive possession.

¶64. Ironically, had the trial judge given Townsend's D-9 Jury Instruction, I would not be writing this opinion. The trial judge found the following language in Jury Instruction D-9 to be objectionable:

> Where the particular substance is not in the actual physical possession of the Defendant, there must be sufficient facts to establish beyond a reasonable doubt that the substance involved was subject to the Defendant's dominion or control.

This language closely mirrors language found in an earlier opinion of this Court where we discussed the elements of constructive possession and held:

> [T]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

*Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971); *see*, *also*, *Newell*, 590 So. 2d at 1388; *Pate v. State*, 557 So. 2d 1183, 1184 (Miss. 1990) (quoting *Guilbeau v. State*, 502 So. 2d 639, 641 (Miss. 1987)). Clearly, Jury Instruction D-9 should have been given so that the jury could be properly apprised of the elements of constructive possession. The trial court's failure to give this instruction in light of the problems inherent in S-1 and S-2 constitutes reversible error.

¶65. Because the language contained in D-9 was legally correct, and since the State's instructions were legally insufficient to instruct the jury as to the elements of constructive possession, I submit that the lower court committed reversible error in granting State's Jury Instruction S-2 and denying Townsend's D-9 Jury Instruction. Accordingly, I respectfully dissent from the majority's opinion insofar as it finds that no reversible error occurred in regards to the submission of Jury Instruction S-2 and the denial of D-9.

## McRAE, JUSTICE, DISSENTING:

¶66. Because probable cause did not exist at the time of the arrest, the officers were not entitled to reopen Townsend's automobile subsequent to the arrest and initiate a search of his vehicle. There must be information existing prior to the time of the arrest leading an officer to believe that contraband or evidence material to a criminal investigation would be found. ***Rooks v. State***, 529 So. 2d 546 (Miss. 1988). The majority's utilization of hindsight to establish probable cause in this case represents a substantial threat to every individual's right against unreasonable search and seizure.

¶67. In this case, the officer arrested Townsend for failure to pay traffic fines and sealed his car for towing. At this particular point in time, there was no indication that the car contained contraband or evidence in support of the charges upon which Townsend had been arrested. The officers then initiated a search of the automobile **after the arrest** for his failure to pay traffic fines. Why? At the time of the search, the arresting officer had already taken Townsend to jail. His vehicle was in the possession of the remaining two officers. There was no danger that evidence would be destroyed or removed, and there was ample time to obtain a warrant. Viewing the circumstances as they existed at that time, and without the aid of hindsight, the facts clearly reveal that no probable cause existed to initiate a search of his automobile. The facts of this case do not establish a search to be "incident to arrest."

¶68. The officers indicate that the automobile was opened solely because Townsend asked to retrieve his valuables from the car. It was only in response to this statement that they searched the automobile. In other words, the undisputed facts and totality of the circumstances unequivocally reveal that the car was searched under the mask of consent. Because the arrest had been completed at the time of the search, the officers never considered this search to be "incident to arrest." By maintaining at trial that the search was initiated upon Townsend's request to retrieve his valuables from his car, the officers implicitly admitted they searched the car based only on Townsend's consent. Although the majority fails to address the issue of consent, they begin their entire analysis of the facts with the proposition that the officers entered the car after Townsend requested them to do so. It should be noted that Townsend asked only if he himself could retrieve his valuables before they towed his car. Because he did not ask the officers to look for the valuables, his statements simply cannot establish consent. This would explain the majority's failure to address the issue of consent as it would certainly be decided in Townsend's favor.

¶69. In *Fields v. State*, 382 So.2d 1098, 1100 (Miss. 1980), Fields was arrested for speeding and possession of PCP and marijuana which had allegedly been thrown from the car during a chase which led to his arrest. While he was in jail, the officers searched his vehicle, without obtaining a search warrant, and found more marijuana. This Court found that since Fields was in jail at the time of the search, "[t]here was ample time to obtain a warrant and no probability that the automobile could be removed beyond the reach of the officers." *Id*. at 1101. It was determined that the "search incident to arrest" rule could not be used to justify the officers' failure to obtain a search warrant before searching his automobile. This Court reversed Fields' marijuana conviction based on his right to protection against unlawful searches and seizures under the Fourth Amendment to the United States Constitution. *Id*. The case at hand cannot be materially distinguished.

¶70. The officers initiated the search of this automobile without consent or probable cause. Only under the proper circumstances may an automobile be validly searched as a search incident to arrest. *Miller v. State*, 373 So. 2d 1004, 1006 (Miss. 1979). This case did not present the proper circumstances constituting a valid search incident to arrest. Without relying on hindsight, the analysis does reach the point where the officers allegedly smelled marijuana since they were unlawfully in the automobile in the first place. Townsend was away from the car when arrested, and the car was closed up for towing. He had no access whatsoever to the car at the time of the search. *See New York v. Belton*, 453 U.S. 454, 461 (1981) (recognizing that permissive search of car compartment incident to arrest is based on the fact that compartment is "within reach" of the arrestee). The majority has essentially looked at the facts in hindsight, reconstructed the events, and at the urging of the State, manufactured reasons for the officers to have conducted the search of this automobile at the particular point in time it was searched. *See Rooks v. State*, 529 So. 2d 546, 554-55 (Miss. 1988) (judiciary must examine "information reasonably leading an officer that **then and there** contraband or evidence material to a criminal investigation would be found")(emphasis added). There is already enough danger of law enforcement officials doing this without the aid of this Court. We must review probable cause in relation to search and seizures as it existed at the time of the incident. Accordingly, I dissent.

1. Q: Upon opening the door, what, if anything, did you notice about his car at that time?

(Turner)A: I smelled a distinct odor of marijuana smoke inside of his car.

Q: Now, at this point in time, were there any other officers present . . . ?

A: Yes, there was. . . . Officer Forrest Adcock?

2. For two recent cases discussing the concept of *res gestae* of the crime, *see*, *Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994), and *Wade v. State*, 583 So. 2d 965 (Miss. 1991). In *Duplantis*, this Court held that the fact that the perpetrator had escaped from jail was a part of the *res gestae* of a burglary because it explained why he was hiding in the victim's house. 644 So. 2d at 1247. In *Wade*, the presence of pornographic magazines was deemed not a part of the *res gestae* of the crime or relevant despite the fact that the child victims were shown pornographic pictures. 583 So. 2d at 967. The rationale was that there was no proof that these particular pictures were the ones shown. *Id*.