# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-01019-SCT

*JEROME WALL, a/k/a JEROME M. WALL, a/k/a*
*JEROME MAURICE WALL, a/k/a "COWB0Y"*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/12/96 |
| TRIAL JUDGE: | HON. ANDREW CLEVELAND BAKER |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID L. WALKER |
| | JOHN DAVID WEDDLE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | ROBERT L. WILLIAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 8/6/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/27/98 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Jerome Wall was indicted by the Grand Jury of the First Judicial District of Panola County, Mississippi, for possession of a controlled substance, diazepam, as an habitual offender pursuant to Miss. Code Ann. § 99-19-83. He was also indicted on a second count for possession of a controlled substance, marijuana, less than a kilogram but more than an ounce as an habitual offender pursuant to Miss. Code Ann. § 99-19-83. Wall had been convicted two previous times in Shelby County, Tennessee, once for aggravated robbery and a second time for robbery.

¶2. After the conclusion of all evidence and after both parties rested, the jury deliberated and returned a verdict of not guilty with respect to Count One of the indictment and guilty with respect to Count Two of the indictment. A sentencing proceeding was held wherein the State presented evidence and the trial court, Judge Andrew C. Baker, presiding, found Wall to be an habitual offender within the

meaning of Miss. Code Ann. § 99-19-83. Wall was sentenced to life in the custody of the Mississippi Department of Corrections without hope of reduction, parole or early release.

¶3. Aggrieved by the judgment rendered against him, Palm has perfected an appeal to this Court raising the following issues:

> **I. WHETHER THE VERDICT OF THE JURY AS TO COUNT TWO OF THE INDICTMENT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?**
>
> **II. WHETHER THE TRIAL JUDGE ERRED IN DENYING JURY INSTRUCTION D-2 AND IN GRANTING INSTRUCTIONS S-3 AND S-4?**
>
> **III. WHETHER THE TRIAL JUDGE ERRED IN OVERRULING WALL'S MOTION TO DISMISS FOR LACK OF A CONSTITUTIONAL SPEEDY TRIAL?**
>
> **IV. WHETHER THE TRIAL JUDGE ERRED IN OVERRULING WALL'S MOTION FOR A DIRECTED VERDICT OF ACQUITTAL?**
>
> **V. WHETHER THE TRIAL JUDGE'S SENTENCE OF LIFE WITHOUT PAROLE VIOLATES THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3 SECTION 28 TO THE MISSISSIPPI STATE CONSTITUTION?**

## STATEMENT OF THE FACTS

¶4. The State's first witness at trial was Andy Estridge, an investigator with the Mississippi Highway Safety Patrol. Estridge testified that on March 17, 1995, he was on duty with Dennis Weaver, a Highway Patrolman. Around 10:30 or 10:40 that morning while completing the issuance of a citation to another vehicle, Estridge noticed a gray car headed south on U.S. 51 just north of Sardis, Mississippi, following closely behind another vehicle. Estridge pursued and stopped the gray Buick, exited his patrol car, and met the driver of the Buick at the rear of the Buick. The driver of the vehicle informed Estridge that his Tennessee license had been suspended. At this time, Estridge identified Wall as the driver of the vehicle.

¶5. Estridge testified that he then approached the vehicle to speak to the passenger and detected the odor of marijuana coming from the passenger's compartment of the vehicle. Estridge testified that he searched the passenger compartment and found film canisters containing what he believed to be marijuana. He further testified that Wall became irate and wanted to know who had put the canisters in his car. Estridge put Wall under arrest and checked him further to make sure Wall did not have any marijuana on his person. Estridge then gave the film canisters to Officer Weaver and told him to watch the subject because he Estridge wanted to finish checking the car. Estridge testified while he began checking the passenger's person, he noticed that Weaver and Wall were gone from the location. He immediately went to the radio dispatch to call for assistance.

¶6. Weaver returned without Wall, who was not seen again. Estridge identified the film canisters and they were marked for identification. Estridge testified that he placed the passenger under arrest , got the tag number on the vehicle, and took photographs of the vehicle which were admitted into

evidence. After another search of the vehicle by Weaver, more alleged marijuana was found on the driver's side and a duffel bag containing several items was found in the trunk which were marked for identification by the State. Estridge requested that Investigator Aldridge assist in the location of Wall. Estridge further testified that he did not fingerprint the passenger of the vehicle, Denorris Carter, nor did he request the crime lab to lift fingerprints from the film canisters or other items found in the vehicle, nor was any part of the vehicle itself fingerprinted.

¶7. Officer Weaver testified that after he and Estridge had stopped the gray Buick, Estridge asked him to get information from Wall. Weaver identified Wall as the driver of the gray Buick. Weaver testified that while he was busy placing his ticket book on the rear of the patrol car, Wall ran. Weaver pursued Wall, but could not retrieve him. Weaver further confirmed the items that Estridge testified he had found in the gray Buick. However, Weaver could not testify as to whether or not Wall was ever placed under arrest, but did testify that he did not place him under arrest. Weaver only touched the handles of the duffel bag and did not touch the bags contained in the duffel bag. Weaver did not fingerprint the passenger, Carter, and testified that he did not know whether there was any request made to have any of the items seized from the gray Buick fingerprinted.

¶8. Investigator Sammy Aldridge testified that he was asked to assist in locating Wall. Aldridge was unsuccessful in his efforts, but later discovered that the Tennessee authorities had located Wall and had him in custody.

¶9. J.C. Smiley, a crime lab technician with the Mississippi Crime Laboratory, testified that he was called upon to test the substance contained in Exhibit Number 1 and concluded that it contained marijuana and Diazepam. Smiley also testified that Exhibit 3 and 5 both contained marijuana. He testified that only residue was found in the film canisters. However, he testified that he was not asked to get any fingerprints from the evidence. He also admitted that he had no knowledge concerning to whom the substances belonged.

¶10. With the end of Smiley's testimony, the State rested and Wall presented his motion for directed verdict which was denied. Wall rested without calling any witnesses.

### DISCUSSION OF THE ISSUES

### I. WHETHER THE VERDICT OF THE JURY AS TO COUNT TWO OF THE INDICTMENT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

¶11. Wall argues that his conviction was against the overwhelming weight of the evidence. He says that there was no credible evidence which would tend to show that he had direct control or constructive possession over the controlled substances found in the vehicle and that the jury's verdict was for that reason against the overwhelming weight of the evidence. Wall also states that the fact that a passenger was in the vehicle is enough to trigger the requirement that the State should have to show additional incriminating circumstances to justify a finding of constructive possession. *Cunningham v. State*, 583 So.2d 960, 962 (Miss. 1991).

¶12. "To determine whether a jury verdict is against the overwhelming weight of the evidence, [this

Court] views all of the evidence in the light consistent with the verdict and give[s] the State all favorable inferences which may be drawn from the evidence." *Strong v. State*, 600 So.2d 199, 204 (Miss. 1992) (*citing Corley v. State*, 584 So.2d 769, 773 (Miss. 1991)). This Court will reverse only when it is convinced that the trial court has abused its discretion in failing to grant a new trial. *Strong*, 600 So.2d at 204.

¶13. The theory of constructive possession has been explained in *Curry v. State*, 249 So.2d 414 (Miss. 1971), as follows:

> [T]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject due to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

*Id.* at 416. The theory was further defined in *Hamburg v. State*, 248 So.2d 430 (Miss. 1971), that "one who is the owner in possession of the premises, . . . is presumed to be in constructive possession of the articles found in or on the property possessed." *Id.* at 432. *See Jones v. State*, 693 So.2d 375, 376 (Miss. 1997); *Townsend v. State*, 681 So.2d 497, 510 (Miss. 1996). In other words, the owner of a vehicle is presumed to be in constructive possession. In the case sub judice, Wall was the owner and operator of the vehicle and, thus, is presumed to be in constructive possession. Wall did not present any evidence to overcome this presumption aside of mentioning the fact that there was a passenger present in the vehicle with him. However, it is of no consequence that there was a passenger present in the vehicle with Wall. It is quite possible to have joint constructive possession. *Powell v. State*, 355 So.2d 1378, 1379 (Miss. 1978). The State was not required to establish additional incriminating circumstances. *Ferrell v. State*, 649 So.2d 831, 835 (Miss. 1995).

¶14. Furthermore, this case is quite similar to *Wolf v. State*, 260 So.2d 425 (Miss. 1972). In *Wolf*, this Court rejected the defendant's argument, stating that the evidence showed that the car belonged to Wolf, that he had been driving it, that the marijuana was found in the immediate proximity of the defendant, and that these circumstances were sufficient to support the jury's finding of guilt. *Id.* at 432. These are exactly the facts described in the record of the present case. The evidence presented to the jury in the case sub judice was sufficient to support the jury's guilty verdict. Therefore, Wall's first assignment of error is without merit.

### II. WHETHER THE TRIAL JUDGE ERRED IN DENYING JURY INSTRUCTION D-2 AND IN GRANTING INSTRUCTIONS S-3 AND S-4?

¶15. Wall's next assignment of error is that the trial judge erred in denying jury instruction D-2 and in granting instructions S-3 and S-4. Wall first made a request for a peremptory instruction, D-2, instructing the jury to return a verdict of not guilty on Count 2 of the indictment which was denied by the trial judge. The standard of review for peremptory instructions and directed verdicts are the same. "In passing upon a request for a peremptory instruction, all evidence introduced by the State is to be accepted as true, together with any reasonable inferences that can be drawn from that evidence, and if sufficient evidence to support a verdict of guilty exists, the motion for a directed verdict is to be overruled." *Brown v. State*, 556 So.2d 338, 340 (Miss. 1990) (*citing Butler v. State*, 544 So.2d 816

(Miss. 1989)). "Furthermore, when the trial court has erred in refusing to grant the defendant's request for a peremptory instruction, then the case must be reversed and the defendant discharged." **Brown**, 556 So.2d at 340 (*citing **Sisk v. State***, 290 So.2d 608, 611 (Miss. 1974)). However, this Court recognizes that a defendant shall not be discharged short of a conclusion that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. **Id.**

¶16. However, as discussed in the previous issue, there was sufficient evidence to support a finding by the jury that Wall had constructive possession over the controlled substance found in his vehicle. This is all that is legally required to survive a motion for a directed verdict, or as here a peremptory instruction. **Id.** Because there was legally sufficient credible evidence to submit to the jury, it was proper for the trial court to refuse the peremptory instruction. There is no merit to this assignment of error.

¶17. Wall also objected to Jury Instructions S-3 and S-4. Wall claims that the jury was improperly instructed since Jury Instruction S-3 included the phrase "there must be sufficient facts to warrant a finding by the jury that Jerome Wall was aware of the presence and character of the Diazepam and Marijuana . . ." This Court's standard in reviewing jury instructions is to read all instructions together to determine whether the jury has been correctly instructed. **Townsend**, 681 So.2d at 509. As long as the instructions given to the jury as a whole fairly and adequately state the law and are supported by the evidence, reversal is inappropriate. **Id.** *See also* **Sanders v. State**, 313 So.2d 398, 401 (Miss. 1975). Wall contends that there was no evidence to support the State's instruction that Wall was aware of the presence of marijuana in the vehicle and the instruction should have been denied.

¶18. The record shows that Wall was driving the vehicle. The officers ran the tag and found the vehicle to be registered to Wall which shows he had dominion and control over the vehicle. This is sufficient evidence to send the case to the jury and, thus, to support instruction S-3. **Townsend**, 681 So.2d at 509-10. There is no merit to this assignment of error.

¶19. Lastly, Wall claims it was error to give Jury Instruction S-4, a "flight instruction." In **Tran v. State**, 681 So.2d 514 (Miss. 1996), this Court held that flight instructions which indicate that flight may be considered as a circumstance of guilt or guilty knowledge are appropriate only where the flight is unexplained and is probative of guilt or guilty knowledge. **Tran v. State**, 681 So.2d 514, 519 (Miss. 1996). In the case sub judice, Wall gives no explanation for his flight. Thus, the only question to be answered is whether the flight was probative.

¶20. The answer to this question is obviously yes. Wall and his companion were stopped in Wall's vehicle. The officers discovered contraband of two types in the vehicle. After the officers discovered the controlled substances, Wall fled from the scene. If Wall was innocent, threatened or afraid, this fact was not bought out to the jury. Consequently, his flight was probative of guilty knowledge. The two-prong test of **Tran** is met and, thus, the fight instruction was appropriate. There is no merit to this assignment of error.

### III. WHETHER THE TRIAL JUDGE ERRED IN OVERRULING WALL'S MOTION TO DISMISS FOR LACK OF A CONSTITUTIONAL SPEEDY TRIAL?

¶21. In this allegation of error Wall claims he was denied his constitutional right to a speedy trial.

However, it appears from the record that there is no speedy trial problem in the case sub judice. Wall was stopped on March 17th, 1995, at which time he fled immediately upon being arrested. He was later arrested on March 30th, 1995, in Tennessee on other charges for which he became incarcerated in Tennessee until his release on November 3, 1995. Wall remained out of custody until April 16th, 1996, at which point he was arrested again and was taken into custody for Mississippi. It was at this time that the State of Mississippi was finally able to locate him and begin extradition proceedings. On April 19th, 1996, Wall agreed to submit himself to the jurisdiction of the Mississippi courts. On May 29th, 1996, Wall appeared before the Court Administrator and asked that the case be continued to give him additional time to get an attorney. The Court Administrator then set his return date for June 11th, 1996. His trial began on August 5th, 1996.

¶22. Thus, the record shows that the State of Mississippi did not even know of Wall's whereabouts until April of 1996. The defendant's arrest and incarceration in Tennessee on other charges does not start the clock ticking against the State of Mississippi. The State was not even able to arrest Wall until April of 1996 when he was arrested again on another charge and was turned over to the State of Mississippi. Thus, only about four months passed from the time Mississippi gained custody of Wall and re-arrested him on the present charge until his trial took place in August of the same year. This does not implicate a delay of proportions sufficient to trigger the analysis under *Barker v. Wingo*, 407 U.S. 514 (1972). This Court has held that a delay of eight months or longer is presumptively prejudicial. *Herring v. State*, 691 So.2d 948, 955 (Miss. 1997). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Therefore, this Court need not even consider the other three *Barker* factors as Wall's assignment of error is without merit.

¶23. However, if this Court were to address this issue on the merits, the other three factors would weigh heavily in favor of the State. The four factors to consider according to *Barker* are: (1) length of the delay, (2) reason for the delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. *Herring*, 691 So.2d at 955-56.

¶24. This Court has held that "[o]nce we find the delay presumptively prejudicial, the burden shifts to the prosecutor to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." *State v. Ferguson*, 576 So.2d 1252, 1254 (Miss. 1991). The State has shown and the lower court found that the overwhelming majority of the delay in the case sub judice is due to Wall himself. He fled the jurisdiction, fought extradition after he had already waived it, and asked for the case to be continued so he could have additional time to get an attorney. This factor weighs in favor of the State.

¶25. When considering the third factor, it is important to note that Wall did not assert his right to a speedy trial until June 11, 1996. This was merely two months before he received a trial. Thus, this factor weighs against Wall.

¶26. The fourth and final factor to consider is the prejudice that Wall suffered as a result of the delay of his trial. "The prejudice prong of the *Barker* test seeks to prevent oppressive pretrial incarceration, minimize anxiety and concern of the accused, and to limit the possibility that the defense will be impaired by the inability to locate witnesses or by failing memory of witnesses." *Taylor v. State*, 672 So.2d 1246, 1261 (Miss. 1996). Wall seems to feel that being in jail was sufficient prejudice.

However, this Court does not agree. ***Williamson v. State***, 512 So.2d 868, 877 (Miss. 1987) (implicitly overruled in ***Hansen v. State***, 592 So.2d 114, 134 (Miss.1991) on grounds unrelated. It is important to note that Wall was incarcerated for other offenses, not because of the crime with which he is now charged. ***Russell v. Lynaugh***, 892 F.2d 1205, 1216 (5th Cir. 1989) (cannot claim anxiety of incarceration when serving time for another crime). Wall does not even attempt to assert the last factor, impairment of defense, which is considered when determining if a defendant has been prejudiced. In sum, Wall has made no showing of prejudice to himself or to his defense. Weighing the ***Barker*** factors together, this writer finds no constitutional violation of Wall's prosecution. As there was good cause for the delay in bringing Wall to trial, and as Wall was not prejudiced by the delay, this assignment of error is without merit.

### IV. WHETHER THE TRIAL JUDGE ERRED IN OVERRULING WALL'S MOTION FOR A DIRECTED VERDICT OF ACQUITTAL?

¶27. Wall argues that the trial court erred in not granting his motion for a directed verdict at the conclusion of the State's case and after he had rested, asserting that the State failed to meet its burden of proof, as it had not shown evidence of constructive possession of the controlled substance. "When reviewing the sufficiency of the evidence, this Court looks at the lower court's ruling `on the last occasion when the sufficiency of the evidence was challenged.'" ***Ballenger v. State***, 667 So.2d 1242, 1252 (Miss. 1995) (*quoting* ***Green v. State***, 631 So.2d 167, 174 (1994 Miss)). The last occasion upon which Wall challenged the sufficiency of the evidence was in his Motion for a New Trial. Therefore, this Court is to consider all of the evidence presented throughout the course of the trial. "All evidence and inferences derived therefrom, tending to support the verdict, must be accepted as true, while all evidence favoring the defendant must be disregarded." ***Ballenger***, 667 So.2d at 1252. *See* ***Hart v. State***, 637 So.2d 1329, 1340 (Miss. 1994); ***Clemons v. State***, 460 So.2d 835, 839 (Miss. 1984). "Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." ***Wetz***, 503 So.2d at 808. Therefore, this Court will not disturb a jury's finding unless it is found that no reasonable and fairminded hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. ***Ballenger***, 667 So.2d at 1252-53.

¶28. Accepting all of the evidence and the reasonable inferences that flow from it in favor of the prosecution, it is clearly sufficient to support a guilty verdict. It was not error for the trial court to deny the motion for a directed verdict. This assignment of error is without merit.

### V. WHETHER THE TRIAL JUDGE'S SENTENCE OF LIFE WITHOUT PAROLE VIOLATES THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3 SECTION 28 TO THE MISSISSIPPI STATE CONSTITUTION?

¶29. Wall claims his life without parole sentence is disproportionate under the rationale of ***Clowers v. State***, 522 So.2d 762 (Miss. 1988), and ***Solem v. Helm***, 463 U.S. 277 (1983). "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." ***Hoops v. State***, 681 So.2d 521, 537 (Miss. 1996). "'Further, the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute.'" ***Hoops***, 681 So.2d at 538 (*quoting* ***Fleming v. State***, 604 So.2d 280, 302 (Miss. 1992)). However, this Court will use the three-pronged analysis as set forth by the

United States Supreme Court in *Solem v. Helm*, but only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality." *Hoops*, 681 So.2d at 538. The three factors set out in *Solem* for courts to consider when conducting a proportionality analysis if the threshold comparison is met are:

> (a) gravity of the offense and the harshness of the penalty;
>
> (b) sentences imposed on other criminals in the same jurisdiction; and
>
> (c) sentences imposed for the commission of the same crime in different jurisdictions.

*Solem v. Helm*, 463 U.S. at 292. *Rummel v. Estelle*, 445 U.S. 263 (1980), serves as a guide in the determination of this threshold comparison. The defendant in Rummel was sentenced to life in prison with the possibility of parole under a recidivist statute for a third non-violent felony conviction. Although the total loss from the three crimes was less than $250.00, the United States Supreme Court found Rummel's sentence to be proportionate and not violative of the Eighth Amendment.

¶30. In light of *Rummel*, it cannot be argued that Wall's sentence was grossly disproportionate to his crime. In the present case, the record indicates that Wall was convicted of robbery in August of 1991 or 1992; of armed robbery in August of 1992; and most recently of possession of a controlled substance on August 6, 1996. Moreover, this Court has held that armed robbery is a crime of violence per se. *Ashley v. State*, 538 So.2d 1181, 1185 (Miss. 1989) (*citing King v. State*, 527 So.2d 641, 646 (Miss. 1988)). Thus, Wall would be classified as a habitual offender according § 99-19-83 and could receive a life sentence without parole. For crimes classifiable as felonies in which significant terms of imprisonment in the state penitentiary can be given, the length of the sentence actually imposed is purely a matter of legislative prerogative. *Hopson v. State*, 625 So.2d 395, 404 (Miss. 1993). Therefore, as long as the sentence is within the limits of the statute, the imposition of such sentence is within the sound discretion of the trial court and this Court will not reverse it. On balance, these facts do not lend themselves to a finding that Wall received a sentence grossly disproportionate to his crimes. Therefore, an extended proportionality review under *Solem* is not warranted. There is no merit to this assignment of error.

## CONCLUSION

¶31. Wall first contends that the jury verdict was against the overwhelming weight of the evidence. However, it is presumed that the owner of a vehicle is in constructive possession of evidence found within the vehicle. Wall was not only the owner of the vehicle, but he was also the driver of the vehicle when it was stopped by the highway patrol. The evidence presented to the jury was sufficient to support the jury's guilty verdict. Wall's first assignment of error is without merit.

¶32. Wall next contends that the trial judge should have granted peremptory instruction D-2, and denied jury instructions S-3 and S-4. There was legally sufficient, credible evidence to submit the case to the jury and, thus, it was proper for the trial court to refuse the peremptory instruction. Furthermore, instructions S-3 and S-4 were supported by the evidence and were appropriately given. Wall's second assignment of error is without merit.

¶33. Wall's third argument that he did not receive a constitutional speedy trial is also unpersuasive.

Only a time period of four months passed between the time the State of Mississippi became aware of Wall's location and the time he went to trial. This does not charge a delay of proportions sufficient to trigger the analysis under *Barker*. Therefore, Wall's third assignment of error is meritless.

¶34. Wall's asserts in his fourth assignment of error that the trial judge erred in overruling his motion for a directed verdict. However, this Court has stated that it will not reverse unless it is found that no reasonable and fairminded hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. That is not the case here. All of the evidence and reasonable inferences flowing from it clearly support a guilty verdict. The trial judge was correct in denying Wall's motion for a directed verdict. This assignment of error is without merit.

¶35. Lastly, Wall claims that the trial judge's sentence of life without parole was violative of the Eighth and Fourteenth Amendments and Article 3 Section 28 of the Mississippi State Constitution. However, the record shows that Wall had been convicted of two previous crimes, robbery and armed robbery. These crimes of violence and drug offenses are the reason the legislature devised § 99-19-83. The imposition of such a sentence is within the sound discretion of the trial judge and is not found to be grossly disproportionate. Therefore, Wall's last assignment of error is also found to be without merit.

¶36. **CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE, TO-WIT: LESS THAN A KILOGRAM BUT MORE THAN ONE (1) OUNCE OF MARIHUANA AND SENTENCE OF LIFE IMPRISONMENT AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., CONCURS IN RESULT ONLY.**