# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-02018-SCT

*CHARLES LAMAR JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/27/2007 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MISSISSIPPI OFFICE OF INDIGENT APPEALS BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LA DONNA C. HOLLAND |
| DISTRICT ATTORNEY: | EDDIE BOWEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/13/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     Charles Lamar Johnson was indicted on three counts of armed robbery pursuant to

Mississippi Code Annotated Section 97-3-79 (Rev. 2006) and one count of possession of a

firearm by a convicted felon pursuant to Mississippi Code Annotated Section 97-37-5 (Rev.

2006).  On June 19 and 21, 2006, Johnson was tried by a jury in the Circuit Court of Simpson

County, Mississippi, the Honorable Robert G. Evans presiding.  The jury convicted Johnson

of two counts of armed robbery against Heather Yates and Courtney Jackson and one count

of possession of a firearm by a convicted felon. Johnson was sentenced on Count II, armed robbery, to serve a term of life imprisonment, and on Count III, armed robbery, to serve a term of life imprisonment, each of these two counts to run consecutively to one another. In addition, Johnson was sentenced on Count I of the indictment, felon in possession of a firearm, to serve a term of five years, to run concurrently with the other sentences. The trial court denied all of Johnson's post-trial motions. Johnson appealed to this Court.

**FACTS**

¶2. Heather Yates was the Wendy's assistant manger in Magee, Mississippi, on February 21, 2005. At 11:30 that night, Wendy's had closed, however, the drive-through window was open for business. Yates had closed two registers and had made the deposits into the safe. Sheena Williams and Jayci Hanna, two other Wendy's employees, were near the front drive-through window. Courtney Jackson, another employee, was washing dishes at the back of the restaurant. Yates heard the buzzer for the back door. She went to the door and looked out of the small window and saw another employee, Kary Ellis, at the door. Yates opened the door for Ellis and let him into the restaurant. As Yates walked to the front of the restaurant, she noticed that she had not heard the back door close. When she turned around, she saw a man holding Ellis around his neck. The man wore a mask, dark gloves, and a bandana, and he had a gun.

¶3. The man ordered Yates to turn off all the lights, unplug the telephones, and get down on the floor. The man also stated that if anyone called the police, he would shoot them. He then took the Wendy's cordless telephone and took personal cell phones from Yates and Jackson.

2

¶4. Thereafter, the man asked who was in charge, and Yates raised her hand. At the man's request, Yates told him that most of the money was already in the safe. However, she led him to the drive-through register. Yates accidently hit the credit-card machine, and the man thought that she had pressed an alarm button. He yelled at Yates and threatened to shoot her and put the gun on her head, so Yates told him that it was not an alarm button.

¶5. The man gave Yates a black duffel bag. Yates put the money and credit-card receipts from the drive-through register into the bag. Next, Yates took the robber to the office, opened the safe, and gave him all the money, including rolled coins; one-dollar, five-dollar, and ten-dollar bills; and loose change. Yates stated that the man took $856. The man asked Yates what type of car she drove and took her keys. The man also pointed his gun at all the other employees' heads or backs and searched them for any money or cell phones. The man took a blue denim wallet from Ellis.

¶6. The man then had Yates take him to her vehicle, a 2004 Chevrolet Trail Blazer, and had her start it. He instructed Yates to go back into the restaurant, lock the door, and lie down on the floor. He also told her that if she called the police, he would come back and shoot everyone. Yates testified that the robber wore a mask. Therefore, she could not identify Johnson as the robber.

¶7.     Williams also testified and corroborated much of Yates's testimony.[1]  She stated that the she heard the doorbell ring and someone yell "Get on the floor or I'll kill you."  Williams identified the ski mask, bandana, gloves, and gun.  She also identified the robber's shoes.  Williams stated that she would not forget the robber's shoes because they were unusual.  Williams stated that the tennis shoes were white with a big blue stripe and a small red stripe.  She also stated that the robber put his gun to her head as he looked to see if she had any valuables or a cell phone.  Williams testified that after Yates and the robber went into the office, the robber said "if anyone calls the cops or if anyone moves, I'll come back and I'll shoot you and I'll kill you."  Yates and the robber left the restaurant.  When Yates returned to the restaurant, she lay on the floor, and no one moved.  Later, the employees realized that Brown's cell phone was on the counter.  Ellis retrieved the cell phone and called the police.

¶8.     Officer Wesley Garner, assistant chief of the criminal investigation unit at the Magee Police Department, stated that he responded to a report of an armed robbery at the Wendy's in Magee.

¶9.     Officer James Hunter Grimes, a narcotics investigator for the Smith County Sheriff's Office, testified that on February 21, 2005, around midnight, he was looking for a vehicle that was used in the armed robbery in Magee.  He saw a maroon Crown Victoria run a stop

_____

[1]  Two other Wendy's employees, Jayci Hanna Brown and Courtney Jackson, testified and corroborated Yates's and Williams's testimony.  Both Brown and Jackson testified that the armed robber was a man with a build similar to Johnson's.  In addition, they testified that the armed robber wore a mask, a bandana, dark gloves, and white shoes; had a gun; and threatened to kill the employees.  Brown stated that the gun was similar to the one used in the robbery because it had paint chips on it.  Jackson testified that the armed robber took her cell phone.

4

sign on Highway 37 in Taylorsville, Mississippi. Officer Grimes identified Johnson as the man he stopped for running a red light. When the officer approached the vehicle, he used a flashlight and saw a black duffel bag with rolled coins on the passenger floorboard in plain view. Johnson gave the officer a driver's license with the name of Navarre Rogers, claiming that he was Rogers. Officer Grimes contacted Officer Garner because he believed that he had the suspect from the armed robbery.

¶10. When Officer Garner arrived, the two officers arrested Johnson for running a red light and having a suspended license and patted him down. The officers also recovered a gun with bullets in a grassy area near the traffic stop. Later, Officer Garner testified that he was present when Officer Grimes retrieved $149 in one-dollar bills from Johnson's left front pocket; a Wendy's merchant receipt, dated February 21, 2005, from Johnson's left front pocket; $480 in five-dollar bills, $30 in ten-dollar bills, and $100 in twenty-dollar bills from Johnson's right-front pocket; a pair of shoes that Johnson wore at the time of his arrest; and a blue bandana from the rear passenger floorboard. A Mississippi driver's license belonging to Kary Ellis and a blue denim wallet with the word "OK" on it was recovered from the front passenger side of Johnson's vehicle. This wallet was identified as belonging to Ellis. The officer also recovered from the front passenger-seat floorboard a black duffel bag which contained coins and merchant receipts from Wendy's. The officer further identified $27 in one-dollar bills and brown cotton gloves recovered from the front seat of Johnson's car. A blue ski mask was recovered from Johnson's driver-side floorboard at the edge of the front seat. The officer also identified a Regent .22 caliber revolver and four rounds of .22 caliber ammunition in the chamber of the gun about fifty feet from Johnson's vehicle.

5

**DISCUSSION**

**I.     Whether the trial court properly denied Johnson's motion to suppress.**

¶11.   Johnson asserts that the trial court erred by denying his motion to suppress evidence obtained during a warrantless search of his vehicle.

¶12.   While Johnson argues the warrantless search was unlawful under a number of doctrines, the plain-view and search-incident-to-arrest exceptions to the warrant requirement are dispositive of the issue.

¶13.   In *Moore v. State*, 933 So. 2d 910, 914 (Miss. 2006), this Court set forth the standard of review for denial of a motion to suppress, stating:

> In reviewing the denial of a motion to suppress, we must determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence. *Price v. State*, 752 So. 2d 1070 (P9) (Miss. Ct. App. 1999) (citing *Magee v. State*, 542 So. 2d 228, 231 (Miss. 1989); *Nicholson v. State*, 523 So. 2d 68, 71 (Miss. 1988); *Ray v. State*, 503 So. 2d 222, 224 (Miss. 1986)). Where supported by substantial credible evidence, this Court shall not disturb those findings. *Ray*, 503 So. 2d at 223-24.

¶14.   At the suppression hearing, Officer Grimes identified Johnson as the person he stopped on February 21, 2005, for running a stop sign. For safety purposes, Officer Grimes had shone a light on Johnson and had seen a black duffel bag with rolled coins on the passenger floorboard. Officer Grimes testified that a radio dispatch by the sheriff's department and by another officer informed him of the armed robbery in Magee. The officer knew a black duffel bag was used in the Wendy's armed robbery, and he saw a black duffel bag in the passenger floorboard with rolled change.

6

¶15.   Officer Grimes said Johnson gave him a driver's license with the name Navarre Rogers. After a check of the license revealed a suspended license, Officer Grimes called for back-up assistance. Officer Gabe Horn arrived, and both officers approached the vehicle. Officer Grimes told Johnson that he was stopped for running a red light, and he had to get out of the vehicle because he had a suspended license and had to be issued a citation. Officer Grimes then told the driver that he had to pat him down for officer safety to make sure that he had no weapons. Before arresting Johnson for running the stop sign, Officer Grimes saw money sticking out of Johnson's pockets. Officer Grimes contacted Officer Garner about the black duffel bag and informed him that the driver was in custody. The vehicle initially was checked for guns. Later, after Johnson was in custody, the officers searched the vehicle.

¶16.   Officer Garner testified that when he looked into the vehicle, he saw a black duffel bag with rolled coins and a denim wallet with an "OK" sticker on it on the passenger-side floorboard and a blue ski mask on the driver's side floorboard. He also saw a pair of brown gloves on the front seat. Officer Garner also noticed that Johnson was wearing a tan-colored shirt and white shoes similar to those described by the Wendy's employees. Officer Garner searched the vehicle.

¶17.   The trial court conducted a hearing and denied the motion to suppress based on the plain-view doctrine. The trial court ruled, in part:

> The testimony, as I recollect it, and the facts, as I find them, are that the officer observed the defendant's driving, while it was not illegal, he thought it suspicious and it attracted his attention at which time he observed Mr. Johnson run a stop sign. When he stopped him for running the stop sign, he observed, in plain view, a black duffel bag containing rolled coins. The black duffel bag met the description of such a bag alleged to have been used in a robbery.

7

This gave Grimes cause to detain the defendant and give the physical description to Officer Garner in Magee. This gave Officer Garner a reason to travel to Taylorsville and determine whether the defendant fit the physical description. Finding that he did, as well as the shirt, duffel bag, ski mask and shoes in plain view, gave Garner and Grimes reasonable grounds to search the vehicle. The items I just enumerated seized in plain view gave the officers probable cause to arrest the defendant for the alleged robbery. So, the motion will be denied.

## A.    Plain view.

¶18.    In *Townsend v. State*, 681 So. 2d 497, 503 (Miss. 1996), this Court held "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Townsend*, 681 So. 2d at 503 (citing *Harris v. United States*, 390 U.S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067 (1968)); *Godbold v. State*, 731 So. 2d 1184, 1190 (Miss. 1999). "[I]f supported by probable cause, a warrantless search of an automobile and its contents does not violate the Fourth Amendment." *Townsend*, 681 So. 2d at 503 (citing *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)). Likewise in *McKee v. State*, 878 So. 2d 232, 236 (Miss. Ct. App. 2004), the Court of Appeals stated:

> While a warrant is generally required before the search for or seizure of evidence may be conducted, no warrant is required to seize an object in plain view when viewed by an officer from a place he has the lawful right to be, its incriminating character is readily apparent and the officer has a lawful right of access to the evidence. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). However, this exception only forgives the lack of a warrant. There must still be probable cause before such a search or seizure can be made. *Arizona v. Hicks*, 480 U.S. 321, 326-27, 107 S. Ct. 1149, 94 L. Ed. 2d 347(1987)).

*McKee*, 878 So. 2d at 236.

¶19.    Johnson asserts that the contents of the black bag were not readily viewable and that nothing could be inferred from the outward appearance of the bag.  The record, however, reveals otherwise.  Officer Grimes had probable cause to stop Johnson for running a red light. When Officer Grimes initially stopped Johnson, he approached the vehicle and saw the black duffel bag with the rolled coins on the passenger seat.[2]  He also stated that, prior to stopping Johnson, a police radio dispatch had informed him that a black duffel bag was used to take money, including rolled coins, in the Wendy's robbery.  Officer Horn also testified that he saw the black duffel bag with rolled coins.  In addition, testimony revealed that brown cotton gloves, a blue ski mask, and wallet with an "OK" sticker all were in plain view in the vehicle. All of these items were described by the Wendy's employees to law enforcement.

¶20.    Accordingly, we find that no warrant was required to seize these items, as they met the plain-view exception for a warrantless search.  Officer Grimes had the legal authority to stop Johnson for running a stop sign and to approach the vehicle.  In addition, the incriminating character of the black duffel bag and other items was readily apparent, as the officer was aware that these types of items were used in the recent Wendy's armed robbery, and they were in plain view.

     **B.**     **Search incident to arrest.**

---

[2]  As discussed more fully in Section I.B., the facts here are distinguishable from those of ***Ferrell v. State***, 649 So. 2d 831, 833 (Miss. 1995), wherein this Court determined that there was no contraband in plain view.  A policeman found only a yellow pill *after* picking up a matchbox which covered the pill.  *Id*. at 834.  This matchbox contained matches.  *Id*.  Then, the policeman picked up a second matchbox, which was closed, opened the box, and discovered crack cocaine.  *Id*.

¶21.    Johnson also argues that the search was not a proper search incident to arrest. This Court finds that the plain-view exception to the warrantless search is sufficient in this case; however, we also will address the search-incident-to-arrest exception to a warrantless search.

¶22.    Relying on *Ferrell v. State*, 649 So. 2d 831 (Miss. 1995), Johnson argues that, like *Ferrell*, he was handcuffed and therefore was no danger nor did he have the ability to destroy evidence. However, *Ferrell* is distinguishable from the facts of this case. In *Ferrell*, the police officer stopped Ferrell on a traffic violation and suspended license and arrested him. *Id*. at 832. The police found no weapons or contraband on Ferrell when he was searched. *Id*. at 833-34. After Ferrell was in handcuffs, the officer returned to the vehicle and looked under a matchbox and found a yellow pill. *Id*. at 832. The officer saw another matchbox. *Id*. at 833. When he opened the second matchbox, he found crack cocaine. *Id*. This Court found that no contraband had been in plain view. *Id*. The police discovered the yellow pill only after looking under a matchbox. *Id*. at 834. This Court reversed and rendered the cocaine conviction, finding no valid search-incident-to-arrest or plain-view exception. *Id*. at 833-34. This Court reasoned that the search-incident-to-arrest exception was for concerns over an arrestee having a weapon on his person or within his reach and to prevent any attempt to destroy evidence. *Id*. at 833. Since Ferrell was handcuffed, this Court determined him to be no threat and found that the officer had no authority to search the vehicle. *Id*.

¶23.    Here, the officers testified to seeing the black duffel bag and money at the traffic stop in plain view in the vehicle. The gloves, wallet, and ski mask all were in plain view. Officer Grimes patted down Johnson and saw money sticking out of Johnson's pants pockets. The officers recovered money and Wendy's receipts from Johnson. Also when Officer Garner

10

arrived, he saw Johnson was wearing a tan shirt and white tennis shoes. The Wendy's employees had described the armed robber as wearing a tan shirt and white shoes similar to those worn by Johnson. All of these items were readily apparent prior to and at the time Johnson was taken into custody. These facts distinguish this case from *Ferrell*.

¶24.     In *Rankin v. State*, 636 So. 2d 652, 657 (Miss. 1994), this Court stated:

> The strictures of the Fourth Amendment are not violated when one under lawful custodial arrest is subjected to a full search of his person. *U.S. v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973). A search incident to a valid arrest is not limited to a *Terry* type search. *Id.*, at 229, 945 S. Ct. at 747. The area within the arrestee's immediate control, from which he might obtain a weapon or where he may conceal evidence, may also be searched, consistent with the Fourth Amendment. *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), *rehearing denied*, 396 U.S. 869, 90 S. Ct. 36, 24 L. Ed. 2d 124 (1969). The personal effects in the arrestee's possession at the place of detention, which were subject to a search at the time and place of arrest, may later be searched and seized without a warrant at the place of detention. *U.S. v. Edwards*, 415 U.S. 800, 805-06, 94 S. Ct. 1234, 39 L. Ed. 2d 771 (1974).

(footnote omitted).

¶25.     Furthermore, in *Townsend v. State*, 681 So. 2d 497, 503 (Miss. 1996), a case decided after *Ferrell*, Townsend made a similar argument to Johnson. However, this Court held that a search incident to arrest was valid where the arrestee was handcuffed and in a patrol car at the time of the search of his vehicle. *Id*. (citing *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L. Ed. 2d 768 (1981)).

¶26.     Accordingly, this Court finds that, alternatively, the search of Johnson and his vehicle was valid pursuant to the search-incident-to-arrest exception to the requirement for a warrant.

   **II.     Whether defense counsel provided ineffective assistance of counsel.**

11

¶27. Johnson argues that his trial counsel was ineffective for failing to request a circumstantial-evidence instruction. He claims that his case was completely circumstantial, because there were no eyewitnesses and no confession. The testimony revealed that the armed robber wore a ski mask, therefore, no victim positively identified Johnson as the armed robber. However, numerous Wendy's employees were eyewitnesses to the crime. Four of the employees who were present and witnessed the armed robbery testified at trial.

¶28. In *Havard v. State*, 928 So. 2d 771, 781 (Miss. 2006), this Court cited the two-prong test for ineffective assistance of counsel of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674,(1984) and held:

> A convicted defendant must meet a two-pronged test to prove his trial counsel was constitutionally ineffective. [*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. "First, the defendant must show that counsel's performance was deficient . . . second, the defendant must show that the deficient performance prejudiced the defense." *Id*.

*Havard*, 928 So. 2d at 781. In *Havard* this Court also held that for the first prong, "the errors of counsel's performance must be so serious that they prevented counsel from functioning as the Sixth Amendment guarantees." *Havard*, 928 So. 2d at 781. In addition, for the second prong, "the errors of counsel must have been so serious that they deprived the defendant of a fair trial, that being a trial with a reliable result." *Id*. Should a defendant fail to demonstrate that "either prong is not met, the claim fails." *Id*. (citing *Neal v. State*, 525 So. 2d 1279, 1281 (Miss. 1987)).

¶29. In *Hughes v. State*, 983 So. 2d 270, 278 (Miss. 2008), this Court described circumstantial evidence jury instructions:

12

> A jury is instructed to exclude every other reasonable hypothesis than that of guilt when a case is based entirely upon circumstantial evidence. *Jones v. State*, 797 So. 2d 922, 927 (Miss. 2001) (citing *Henderson v. State*, 453 So. 2d 708, 710 (Miss. 1984)). A circumstantial evidence instruction is required "only when the prosecution can produce neither an eyewitness nor a confession/statement by the defendant." *Rubenstein*, 941 So. 2d at 785 (quoting *Ladner v. State*, 584 So. 2d 743, 750 (Miss. 1991)).

*See also* **Jones v. State**, 797 So. 2d 922, 927 (Miss. 2001) ("where *all* the evidence tending to prove guilt of defendant is purely circumstantial, the trial court must grant a jury instruction that every reasonable hypothesis other than that of guilt must be excluded in order to convict.").

¶30. Here, defense counsel did not request a circumstantial-evidence instruction. The trial court does not have to prepare instructions for the litigants. Notwithstanding this, there was direct evidence of the armed robbery by four Wendy's employees who witnessed the crime. These employees testified to items used or taken by the masked man during the armed robbery and to his threats to kill them. Johnson argues that the jury deliberated the case guided by instructions which improperly afforded the state a reduced burden of proof. The record reveals otherwise.

¶31. Here, the evidence was overwhelming in this case. Johnson was pulled over thirty minutes after the armed robbery occurred at Wendy's. He was wearing a tan shirt and distinctive white tennis shoes with a blue and red stripe similar to the clothing described by the Wendy's employees as being worn by the robber. Furthermore, he had brown cotton gloves, a blue ski mask, a denim wallet with an "OK" sticker on it, a black duffel bag with rolled coins, various amounts of bills, and Wendy's receipts dated February 21, 2005. All of these items were described by the Wendy's employees as being used or taken in the armed

robbery. The police also recovered a hand gun with bullets approximately fifty yards from Johnson's vehicle. Numerous Wendy's employees testified that the recovered gun was similar to that used in the robbery. Since eyewitnesses to the crime testified and the evidence against Johnson was overwhelming, a circumstantial evidence instruction was not appropriate. Therefore, trial counsel was not ineffective in failing to request one.

## CONCLUSION

¶32. For the foregoing reasons, this Court affirms the judgment of the Circuit Court of Simpson County.

¶33. **COUNT I: CONVICTION OF FELON IN POSSESSION OF A FIREARM AND SENTENCE OF FIVE (5) YEARS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF ARMED ROBBERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF ARMED ROBBERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IN COUNTS II AND III SHALL RUN CONSECUTIVELY. SENTENCE IN COUNT I SHALL RUN CONCURRENTLY WITH THE SENTENCES IMPOSED IN COUNTS II AND III.**

**WALLER AND DIAZ, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. SMITH, C.J., AND GRAVES, J., CONCUR IN RESULT ONLY. LAMAR, J., NOT PARTICIPATING.**